| JOHN R. MCMAHON | : | NO. 8331 |
|---|---|---|
| versus | : | COURT OF APPEAL |
| JOHN PETER BOESCH | : | PARISH OF ORLEANS |

WILLIAM A. BELL, JUDGE:

June 19th, 1922.

June 19-22

BY: WILLIAM A. BELL, JUDGE:

Plaintiff files suit against defendant claiming Ten Thousand Dollars ($10,000) damages alleged to have been caused by defendant's minor son. From a judgment rendered by the Trial Court appeal was taken to the Supreme Court of Louisiana, but was remanded by the Appellate Court to this Court, by judgment rendered June 15th, 1921, which judgment reads in part as follows, to wit:

> "It becomes apparent, upon reading the evidence, that the amount really involved herein could in no conceivable view be sufficient to vest this Court with jurisdiction of the appeal. It is therefore ordered that the case be transferred to the Court of Appeal, Parish of Orleans, the costs of the appeal to this Court to be paid by the appellant; other costs to await the judgment of that tribunal."

The petition in this case shows that plaintiff claims damages from defendant of various acts of defendant's minor child, who, it is alleged, was constantly annoying petitioner in the peaceful possession of his home; that on February 20th and 24th, 1917, said minor, Peter Boesch, placed tacks on the driveway adjoining plaintiff's home, and on both occasions caused puncture to the tires of plaintiff's automobile, and that for these offenses the said minor was found guilty in the Juvenile Court; that after the trial in the Juvenile Court, the mother of the boy, and wife of defendant, made ugly and vulgar signs towards plaintiff particularly on Sunday, March 4th, 1917; that on other occasions screens and window glasses in plaintiff's residence were broken, the bell of his residence also broken, and that these acts all charged to have been done by defendant's son, together with the alleged insults offered plaintiff by the defendant's wife; that as a result of said acts, petitioner has suffered inconvenience, annoyance, humiliation and damage, to the extent of $10,000.

726

Defendant answers this petition denying particularly that the minor, Peter Boesch, was guilty of the act of placing tacks which caused puncture to tires of plaintiff's automobile, and alleges particularly that the said minor was discharged by the Juvenile Court under a trial for this offense, and annexes to the said answer a copy of the proceedings taken in said court.

Further answering, defendant alleges that if a pane of glass were broken by respondent's son, it was done innocently and without malice, and while playing in a game of ball with other boys. It is particularly denied that defendant is responsible for any broken screens or glasses or bell in plaintiff's residence, except the pane of glass claimed to have been broken innocently, and for which defendant alleges that plaintiff was paid by him.

It is finally denied that the minor, Peter Boesch, was encouraged in any way by his mother, defendant's wife, to commit any acts of violence or annoyance.

The judge a quo, rendered a judgment decreeing that there be judgment in favor of the defendant and against the plaintiff, rejecting the latter's demand at his cost, and at the trial of the case, the following reasons for judgment were dictated into the record:

> BY THE COURT: "The evidence is perfectly clear to my mind that defendant is not liable, committed no act. This last boy was the only one evidently took those tacks as he says himself, he went into the kitchen and got them, and if it is true, he put them in the driveway, which I very much doubt. Judgment for defendant."

Defendant offered no evidence at the trial of this case except the certified copy of the proceedings in the Juvenile Court, held three days prior to the institution of this damage suit. This evidence shows that the plaintiff made affidavit against defendant's son, the minor, "under the age of seventeen years" in which he charged the child with delinquency in that on the 20th and 24th days of February, 1917, while

727

within the jurisdiction of the Juvenile Court, the said minor was guilty of malicious mischief. On the back of the affidavit it appears that on the 28th day of February, 1917, the child was paroled by the Court, under the care of its parents, and on the 3rd day of March, 1917, was discharged "with reprimand" by the late Hon. Andrew H. Wilson, Judge of the Court.

One of the boys, a playmate of Peter Boesch, was called as a witness in this case, the material portion of his testimony being as follows:

By Mr. Wendling: "Do you recall having testified in the Juvenile Court before Judge Wilson?

By the Court: Ask him what he testified to. Do you remember what you told Judge Wilson?

A.    Yes, sir.

Q.    You can repeat that?

By Mr. Wendling:    What did you tell Judge Wilson?

A.    I told him that we all put the tacks.

Q.    When you say, we all, who do you refer to?

A.    Peter Boesch, Jack Gassard, Willie Gassard and myself.

Q.    Peter Boesch you refer to is the son of the defendant?

A.    Yes, sir.

Q.    He lives with his father?

A.    Yes, sir.

Q.    How many times did you put tacks there?

A.    Once.

Q.    Only once?

A.    Yes.

Q.    Where did you get the tacks from?

A.    Mrs. Boesch's house.

Q.    Peter Boesch?

A.    Yes, sir.

728

By the Court:

> Who got the tacks?

A. Peter Boesch - all of us.

Q. All of you went into the house and got them?

A. Yes, sir.

Q. Who gave them to you?

A. Mrs. Boesch.

By Mr. Wendling:

Q. Did you tell her what you wanted them for?

A. Yes, sir.

Q. What did you tell her you wanted them for?

A. To put tacks under Mr. McMahon's automobile.

Q. And she gave them to you?

A. No, we took them.

Q. By the Court: Where were the tacks, whereabouts in the house?

A. In the kitchen.

Q. And you boys went into the kitchen and got them?

A. Yes, without her knowing it.

Q. By Mr. Wendling: Was Mrs. Boesch there when you took them?

A. No, she was on the porch.

Q. Did you tell her that you took the tacks when you came out?

A. No, sir."

From the above testimony, there can be no doubt that the order entered in the Juvenile Court while discharging defendant's son with reprimand, shows that the Court found that he, with other boys, had placed tacks on the roadway of plaintiff's garage.

729

There is other testimony in this record given by the plaintiff himself and a third party, placed to watch the boys concerning the matter of placing the tacks as has been charged, but neither the plaintiff nor this witness have testified positively that they themselves saw the tacks being placed as alleged in plaintiff's petition.

The expression of the judge a quo herein above quoted, as well as his rulings shown in portions of the record, make it clear that he considered the playmate of defendant's son a competent witness, of sufficient age to appreciate the solemnity of an oath, and to testify thereunder to the truth.

We do not find, as the trial judge seems to have done, that the playmate only, and not the defendant's son placed the tacks which caused the damage, for we note from the evidence above quoted, that the playmate distinctly said that he had told Judge Wilson "we all put the tacks there ---- where the automobile goes down." However, the offense, though a mischievous one, does not seem to have caused much damage, the punctures complained of having occurred particularly on only two dates, and causing expense, according to plaintiff's testimony, of about seventy-five cents (.75) on each occasion, or a total of one dollar and fifty cents ($1.50).

There is positive evidence, however, and it is not contradicted, that plaintiff himself saw defendant's son on two occasions break two large panes of glass, by using what is called a "nigger-shooter," and that this damage cost plaintiff the sum of $10.00 to repair. There has been definite testimony, sufficient to satisfy any court, that at least plaintiff has been put to expense because of the mischievous, if not malicious conduct of defendant's son, to the extent of $11.50. To disregard this evidence simply because of its trivial nature, would be of

great injustice to plaintiff, who has made positive proof, which cannot be disregarded, and which has not been in any way contradicted by the defendant in this suit, in fact, the record shows that though defendant's son was in court at the trial of this cause that neither defendant nor his son offered any testimony or other evidence to disprove the positive testimony that the damage shown to have been done actually occurred. It is a presumption of law, which the court is compelled to observe, that had defendant's son not committed the acts charged that he would have taken the stand and so testified.

Art. 2318 of the Revised Civil Code reads as follows:

"The father, or after his decease, the mother, are responsible for the damage occasioned by their minor, or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons."

This provision of the Code has been definitely recognized and upheld by decisions of the Supreme Court of this State. In the case of Mullins v. Blaise, 37 Ann., p. 92, the Court said:

"The law itself imputes the fault to the father. It presumes that it resulted from lack of sufficient care, watchfullness and discipline on his part in the exercise of the paternal authority. This is the very reason and foundation of the rule."

In this same case the Court found that the fact that the father was momentarily absent from the house at the time of the accident did not suffice either to exempt him from responsibility, or to transfer it to the mother. See also Marionneaux v. Brugier, 35 Ann., p. 13.

It appears that since the appeal taken in this matter to the Supreme Court of Louisiana that the defendant,

Jean Pierre Boesch, has departed this life, and that by petition of plaintiff filed herein, the deceased defendant's wife, widow and executrix, Mrs. Victoria Coudevilain Boesch, has been made a party to these proceedings.

Considering the facts as now found by us, and the law applicable thereto, we are, for the reasons hereinabove stated, of the opinion that there should be judgment reversing the decree of the lower court, and that plaintiff should recover of defendant in the sum above shown.

It is therefore ordered, adjudged and decreed that the judgment herein appealed from be, and the same hereby is reversed, and that there now be judgment in favor of John R. McMahon, against Mrs. Victoria Coudevilain Boesch, executrix of Jean Pierre Boesch, in the sum of Eleven Dollars and Fifty Cents ($11.50) with interest thereon from judicial demand until paid, and for all costs except those incurred on the appeal to the Supreme Court which have already been taxed by said court against the plaintiff.

<u>JUDGMENT REVERSED</u>.


June 19th, 1922.